526 S.E.2d 248

**STATE of South Carolina, Respondent,**

v.

**Thomas D. VARVIL, Jr., Appellant.**

No. 3096.

Court of Appeals of South Carolina.

Heard Nov. 2, 1999.

Decided Jan. 10, 2000.

336.

C. Carlyle Steele, of Greenville, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Charles H. Richardson, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for respondent.

HUFF, Judge:

A jury convicted Thomas D. Varvil, Jr. on one count of unlawful use of a telephone in violation of S.C.Code Ann. § 16–17–430 (Supp.1998). The trial court sentenced him to ten years imprisonment, suspended upon service of nine months imprisonment and three years probation. Varvil appeals, arguing: (1) Section 16–17–430, as applied, violates his right to freedom of speech under the state and federal constitutions; (2) the trial court should have declared a mistrial on its own motion in response to improper closing argument by the State; (3) the trial court erred in admitting testimony that Varvil drove by Victim's home and office; and (4) the trial court erred in denying his directed verdict motion. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Varvil and Victim were once boyfriend and girlfriend. Victim testified she terminated their relationship of nearly four years in early March 1994. After breaking up with Varvil, Victim never initiated one-on-one contact with him again because she "ended the relationship" and "wanted it to be ended." Varvil, however, began calling her workplace after business hours, leaving messages on her voice mail. Varvil left fifteen to twenty messages on her voice mail from July 11, 1994, to July 25, 1995, the time period referenced in the indictment against him. Victim received several messages within short periods of time, with long lapses between each group of calls. Victim transferred several of the messages onto audio tape.[1] Most of Varvil's messages are accusatory in nature and appear to be attempts to get Victim to contact him. Additionally, he would "show up" at Victim's workplace and drive by her home. She stated both roads that ran by the side and front of her home were dead end streets and Varvil did not live in the area so there was no reason for him to be driving on the roads. She further testified Varvil would drive into the parking lot at her place of work and "specifically"

---

1. Victim also recorded messages Varvil sent to her supervisor. Victim testified, like the messages left by Varvil on her voice mail, the calls made to her supervisor "asked bizarre questions and made subtle threats." The several tapes of the transferred voice mail messages were played for the jury.

drive by her office window. Varvil did not work or live anywhere near her place of employment.

Victim did not contact Varvil in response to the calls. Instead, at the suggestion of the Greenville Sheriff's Office, Victim sent Varvil notices against trespassing at her home. The company she worked for also sent Varvil a trespass notice. These notices were sent in the summer of 1994. Prior to having the notices sent, Victim hired an attorney to write Varvil a letter in an attempt to get him to stop. The phone calls, however, continued. In July of 1995, Victim "couldn't take it anymore" and filed a police report.

## LAW/ANALYSIS

### I. Constitutionality of Section 16–17–430

Varvil contends the application of § 16–17–430 to the facts in this case constitute a violation of his state and federal constitutional rights of free speech. Because Varvil did not raise this argument to the trial court it is not preserved for our review. *State v. Nichols,* 325 S.C. 111, 120–21, 481 S.E.2d 118, 123 (1997) ("An issue may not be raised for the first time on appeal, but must have been raised to the trial judge to be preserved for appellate review."). Constitutional arguments are no exception to the rule, and if not raised to the trial court are deemed waived on appeal. *State v. Powers,* 331 S.C. 37, 501 S.E.2d 116 (1998).

### II. Mistrial

Varvil also argues the trial court erred in failing to grant a mistrial when the solicitor interjected her personal opinion into her closing arguments. This issue is also not preserved as Varvil failed to object to the comment and failed to move for a mistrial. Failure to object to comments made during argument precludes appellate review of the issue. *State v. Wiggins,* 330 S.C. 538, 500 S.E.2d 489 (1998). A defendant's failure to move for a mistrial on grounds of improper argument by the State constitutes waiver of the issue on appeal. *State v. Penland,* 275 S.C. 537, 273 S.E.2d 765 (1981).

### III. Evidence Varvil Drove By Victim's Home

■ Varvil further contends the trial court erred in admitting Victim's testimony that Varvil would drive by her home and office after the break-up. He asserts the evidence was irrelevant and prejudiced him as it is evidence he committed other bad acts. We disagree.

The record shows the solicitor asked Victim whether Varvil had done other things to try to get her attention. Victim responded, "Yes, he would drive by where I lived." Varvil's attorney simply objected, stating no grounds for the objection. The court asked the solicitor what the purpose of the evidence was. The solicitor then explained it was being offered to prove Varvil's intent to harass Victim, a necessary element of § 16–17–430(A)(2). The trial judge then overruled the objection.

■ We initially note that Varvil made only a general objection to the challenged testimony. The trial court clearly considered the objection to be a challenge toward the testimony's relevancy. A general objection is ordinarily insufficient to preserve an issue for appeal. *See State v. Taylor,* 333 S.C. 159, 508 S.E.2d 870 (1998) (appellant's general objection to solicitor's question was insufficient to preserve issue of whether it was an impermissible attack on appellant's character); *State v. Nelson,* 331 S.C. 1, 501 S.E.2d 716 (1998) (general objection which does not specify particular ground on which the objection is based is insufficient to preserve question for review).

■ Assuming arguendo the general objection sufficiently preserved the issue, we nevertheless find no merit to Varvil's argument. A trial court's ruling on the admissibility of evidence is within the court's sound discretion and will not be disturbed absent prejudicial abuse of discretion. *State v. Needs,* 333 S.C. 134, 508 S.E.2d 857 (1998). Relevant evidence is generally admissible whereas irrelevant evidence is inadmissible. Rule 402, SCRE. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. Although evidence of other bad acts is inadmissible to demonstrate a person's character in order to show

action in conformity with that character, such evidence is admissible to show motive, identity, common scheme or plan, absence of accident or mistake, or intent. Rule 404(b), SCRE; *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923).

> South Carolina law precludes evidence of a defendant's prior crimes or other bad acts to prove the defendant's guilt for the crime charged except to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan, or (5) identity. The evidence of prior bad acts must be clear and convincing to be admissible. Further, even though the evidence is clear and convincing and falls within a *Lyle* exception, the trial judge must exclude it if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant.

*State v. Adams,* 322 S.C. 114, 118, 470 S.E.2d 366, 368–369 (1996) (citations omitted).

We agree with the State that the challenged evidence is relevant in that it tends to prove Varvil left the messages on Victim's voice mail with the intent to harass her. To prove that a person who repeatedly telephones another has committed the offense of unlawful use of a telephone under S.C.Code Ann. § 16–17–430(A)(2), the State must prove the purpose of the repeated calls was to annoy or harass that person or his family. At trial, Varvil contended he did not call Victim with the intent to harass her, a contention he maintains on appeal. Evidence that in addition to the calls to Victim's workplace Varvil went out of his way to drive by her home and office tends to prove otherwise. Thus, this evidence was relevant to show Varvil's intent to harass Victim. *See State v. Godwin,* 267 N.C. 216, 147 S.E.2d 890 (1966) (evidence that defendant attempted to block victim's car and frequently followed victim was competent for purpose of showing defendant's intent in charge that defendant repeatedly telephoned victim with intent to harass, annoy and molest victim). We further find the evidence was clear and convincing and its probative value substantially outweighed any unfair prejudice to Varvil. Accordingly, we find no error.

## IV. Directed Verdict

Finally, Varvil argues the trial court erred in denying his motion for a directed verdict. He asserts he was entitled to a directed verdict because the State failed to prove the two

necessary elements under the statute of (1) repeated phone calls and (2) an intention to harass. We find no error.

A trial court ruling on a directed verdict motion is concerned with the existence of evidence, rather than with its weight. *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998). Upon review of the denial of a directed verdict motion, the appellate court must view the evidence in the light most favorable to the State, and if any direct or any substantial circumstantial evidence reasonably tending to prove the defendant's guilt exists, it must find the trial court properly submitted the case to the jury. *Id.*

The indictment against Varvil states:

That THOMAS D. VARVIL, JR. did in Greenville County between July 11, 1994, and July 25, 1995, make repeated telephone calls for the purpose of harassing [Victim]. This is in violation of South Carolina Code of Laws Section 16–17–430.

The language of the indictment charged Varvil with violation of § 16–17–430(A)(2) which provides:

It is unlawful for a person to: ... (2) telephone another repeatedly, whether or not conversation ensues, for the purpose of annoying or harassing another person or his family.

S.C.Code Ann. § 16–17–430(A)(2) (Supp.1998).

Varvil asserts the calls were not "repeatedly" made as intended by the statute because there were only fifteen telephone messages over the one year period covered in the indictment. He argues the calls were not made at the same time and there was insufficient proof of repeated telephone calls as required by the statute. We disagree.

When interpreting a statute, the appellate court's primary function is to ascertain the intention of the legislature. *State v.. Robinson,* 310 S.C. 535, 426 S.E.2d 317 (1992). The words used in the statute must be given their plain and ordinary meaning, without resort to subtle or forced construction to limit or expand the statute's operation. *State v. Four Video Slot Machines,* 317 S.C. 397, 453 S.E.2d 896 (1995). Unless a statute requires otherwise, the words used in the statute must be given their ordinary meaning. *State v. Hendriks,* 318 S.C. 562, 459 S.E.2d 520 (Ct.App.1995). Where the

legislature elects not to define the term in the statute, courts will interpret the term in accord with its usual and customary meaning. *City of Camden v. Brassell,* 326 S.C. 556, 486 S.E.2d 492 (Ct.App.1997). "Repeatedly" is the adverbial form of the term "repeated" meaning "renewed or recurring again and again; said, done, or presented again." Webster's Ninth New Collegiate Dictionary (1990).

The statute does not specify the calls must be repeated within a day, or even days of each other. Taking the evidence in the light most favorable to the State, we find the August 1994 messages, which total five in twelve days, are by themselves sufficient to constitute repeated telephoning under the statute.[2] We therefore find no error in the trial court's denial of Varvil's directed verdict motion on this ground.

Nor do we find merit to Varvil's assertion that the State failed to present sufficient evidence of his intent to harass Victim. Considering the content of the calls alone, we encounter no difficulty in finding evidence of Varvil's intent to harass.

For the foregoing reasons, Varvil's conviction for unlawful use of a telephone is

**AFFIRMED.**

CURETON and HOWARD, JJ., concur.

---

2. Varvil left messages on Victim's voice mail on August 7, 8, 14, 16, and 18 of 1994.